# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

In re: Gunnison Sage-Grouse  
Endangered Species Act Litigation

Civil Action No. 1:15-cv-130-WYD

This document relates only to case no. 1:15-cv-130.

---

### THE STATE OF COLORADO'S UNOPPOSED MOTION TO INTERVENE ON BEHALF OF DEFENDANTS

Pursuant to Fed. R. Civ. P. 24(a)(2), the State of Colorado, by and through its Department of Natural Resources, Division of Parks and Wildlife, and Parks and Wildlife Commission ("Colorado" or "the State"), respectfully moves to intervene in this case on behalf of the U.S. Fish & Wildlife Service ("FWS"), Dan Ashe, the U. S. Department of the Interior, Sally M.R. Jewell, NOAA Fisheries, Eileen Sobeck, Penny Pritzker, and the U.S. Department of Commerce ("Federal Defendants"). In the alternative, Colorado moves for permissive intervention pursuant to Fed. R. Civ. P. 24(b)(1).

In accordance with D.C.Colo.LCivR. 7.1(a), counsel for Colorado has conferred with counsel for the Center for Biological Diversity and Western Watersheds Project ("Plaintiffs"), counsel for Federal Defendants, and counsel for Defendant-Intervenors the Board of County Commissioners of the County of Gunnison, Colorado and the Gunnison County Stockgrowers' Association, Inc. ("Gunnison Intervenors"). Counsel for Plaintiffs, Federal Defendants, and Gunnison Intervenors have stated that they do not oppose this motion.

## INTRODUCTION

Plaintiffs seek judicial review of a decision by FWS to list the Gunnison sage-grouse (*Centrocercus minimus*) as threatened, rather than endangered, under the Endangered Species Act. 16 U.S.C. § 1531—1544. ("ESA"). *See* THREATENED STATUS FOR GUNNISON SAGE-GROUSE, Final Rule, 79 Fed. Reg. 69,192 (Nov. 20, 2014) ("Listing Rule"). Plaintiffs also challenge part of Federal Defendants' FINAL POLICY ON INTERPRETATION OF THE PHRASE "SIGNIFICANT PORTION OF THE RANGE" IN THE ENDANGERED SPECIES ACT'S DEFINITIONS OF "ENDANGERED SPECIES" AND "THREATENED SPECIES," 79 Fed. Reg. 37,578 (July 1, 2014).

Colorado disagrees with FWS's decision to list the Gunnison sage-grouse under the ESA, and strongly disagrees with Plaintiffs' contention that it warrants listing as endangered. Consequently, Colorado seeks to intervene in support of Federal Defendants' decision not to list the Gunnison sage-grouse as endangered under the ESA, but will not support the threatened listing. Colorado has filed a related case, *State of Colorado v. U.S. Fish & Wildlife Service*, No. 1:15-cv-00286 (D. Colo.) (filed Feb. 10, 2015), challenging FWS's decision to list the Gunnison sage-grouse as threatened on the ground that the species does not warrant protection under the ESA, and challenging FWS's designation of critical habitat for the Gunnison sage-grouse. Colorado filed an Amended Complaint/Petition for Review on June 22, 2015 (Doc. No. 14 in 15-cv-286).

## BACKGROUND

The Gunnison sage-grouse is a ground-dwelling bird that depends on sagebrush communities, including native grasses and flowering plants, for food and cover. The species is well-known for its elaborate courtship displays, which take place on open areas called "leks." It was officially designated as a distinct species in 2000, and presently is found only in southwestern Colorado (approximately 98% of the individuals) and southeastern Utah (approximately 2% of the individuals). Listing Rule at 69196, 69199. By contrast, its larger and more widespread relative, the Greater sage-grouse (*Centrocercus urophasianus*), inhabits parts of north-central and northwestern Colorado, as well as parts of ten other western states.

Within its current range, the Gunnison sage-grouse is grouped into seven widely scattered populations. The largest population, found in the Gunnison Basin (located in Gunnison and Saguache counties, Colorado), comprises approximately 84% of the species and covers almost two-thirds (63%) of its occupied habitat. As of the date of the Listing Rule, the Gunnison Basin population was estimated to contain 3978 individuals. *Id.* at 69,196. The remaining 16% of the species is divided among six groups, referred to as "satellite populations." With one exception, all of the satellite populations are located west of the Gunnison Basin. The largest satellite population, located in San Miguel County, Colorado, has approximately 206 birds. Three of the satellite populations each contain fewer than 100 birds. *Id.* at 69197.

Over the past decade, Colorado has spent at least $40 million on intensive conservation efforts for the Gunnison sage-grouse and its habitat. These efforts include focused management actions by CPW such as habitat treatments, predator control, purchasing property and managing it for Gunnison sage-grouse, funding conservation easements, translocating birds to augment small populations, lek monitoring, research, and captive breeding programs. Colorado has also worked closely with the United States Bureau of Land Management ("BLM") and local governments on land use planning that enhances conservation for the Gunnison sage-grouse.

Additionally, Colorado negotiated and maintains a Candidate Conservation Agreement with Assurances ("CCAA") for the Gunnison sage-grouse. The CCAA, to which FWS is a party, provided voluntary opportunities for private landowners to engage in certain habitat conservation measures on their land in exchange for assurances that further measures would not be required if the species were listed. The CCAA has protected thousands of acres of privately owned habitat. Although new enrollments are not allowed following the threatened listing, CPW continues to administer the program for the current enrollees.

Colorado's conservation efforts and those of its local government partners have succeeded. Anchored by the Gunnison Basin population, the Gunnison sage-grouse population has grown to exceed population targets set in 2005 by a team of conservation biologists that included experts from both CPW and FWS.

Despite these successful efforts, in January 2013 FWS published a rule proposing to list the Gunnison sage-grouse as endangered throughout its range, along with a rule proposing to designate 1.7 million acres of critical habitat for the species. ENDANGERED STATUS FOR GUNNISON SAGE-GROUSE, 78 Fed. Reg. 2,486 (Jan. 11, 2013). Colorado took the position that ESA protection for the species was not warranted and provided extensive comments on the proposed rules.

In November 2014, FWS published a final rule listing the Gunnison sage-grouse as "threatened" under the ESA. Listing Rule at 69,192. Concurrently, FWS published a final rule designating approximately 1.4 million acres of critical habitat across nine counties in Colorado and two counties in Utah. Critical Habitat Rule at 69,312.

In January 2015, Plaintiffs filed this case, challenging FWS's determination and asserting that the Gunnison sage-grouse should have been listed as endangered rather than threatened.[1] On the same day, another set of plaintiffs filed a similar case with this court, also asserting the bird should have been listed as endangered and challenging the designation of critical habitat as insufficient. *WildEarth Guardians, et al., v. Dan Ashe*, No. 1:15-cv-131 (D. Colo.) (filed Jan. 20, 2015). These cases, along with one filed by Colorado in February 2015, have been consolidated.

## ARGUMENT

---

[1] Plaintiffs filed an Amended Petition for Review on April 21, 2015 (Doc. No. 9).

I.      **Intervention of Right**

Colorado is entitled to intervene in this case as a matter of right. Fed. R. Civ. P. 24(a), which governs interventions as of right, provides that:

> On timely motion, the court must permit anyone to intervene who:
> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2); *Coal. of Arizona/New Mexico Counties v. Dep't of Interior*, 100 F. 3d. 837, 840 (10th Cir. 1996).

"The central concern in deciding whether intervention [of right] is proper is the practical effect of the litigation on the applicant for intervention." *San Juan Cty. v. United States*, 503 F.3d 1163, 1192 (10th Cir. 2007) (en banc); *see also* Fed. R. Civ. P. 24, advisory committee notes (1966 Amendment) ("If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene."). In addition, in cases implicating issues of public interest, the requirements for intervention may be relaxed. *San Juan Cty.*, 503 F.3d at 1201 (citing *Cascade Natural Gas Corp. v. El Paso Natural Gas Co.*, 386 U.S. 129, 136 (1967)).

Colorado satisfies each of the four prerequisites enumerated in Rule 24(a), and would be substantially affected in a practical sense if the Plaintiffs prevailed in their case. Colorado is therefore entitled to intervene as of right in this matter.

### a. Timeliness of Motion to Intervene

Rule 24(a) does not impose an actual time limit for the filing of motions to intervene, leaving it to the courts' discretion to determine timeliness. Courts assess timeliness "in light of all circumstances, including the length of time since the applicant knew of his interest in the case, prejudice to the existing parties, prejudice to the applicant, and the existence of any unusual circumstances." *Utah Assoc. of Counties v. Clinton*, 255 F.3d 1246, 1250 (10th Cir. 2001) (quoting *Sanguine, Ltd. v. U.S. Dep't of Interior,* 736 F.2d 1416, 1418 (10th Cir.1984)). "[I]ntervention is proper where, despite the passage of time, there has been limited activity in the case and the intervention will not prejudice the existing parties." *Id.* at 1250–51.

Colorado has moved to intervene in this case in a timely manner. The Court has ordered that new parties, claims, and motions to intervene may be filed in these consolidated cases up until August 3rd, 2015. Doc. No. 22, Minute Order (June 18, 2015). Plaintiffs filed their Complaint on January 20, 2105 and Federal Defendants filed an Answer on July 13, 2015. At this early stage of litigation, intervention by Colorado comes before the court's cut-off date, will not prejudice plaintiffs or cause any delay in the proceedings, and is therefore timely.

### b. Colorado has an interest relating to listing of the Gunnison sage-grouse under the ESA.

Rule 24(a)'s interest test is primarily "a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with

7

efficiency and due process." *Am. Ass'n of People With Disabilities v. Herrera*, 257 F.R.D. 236, 246 (D.N.M. 2008) (quoting *Utahns for Better Transp. v. U.S. Dep't of Transp.*, 295 F.3d 1111, 1115 (10th Cir. 2002)). The interest need not be a direct one in the property or transaction at issue, provided that it is an interest that would be impaired by the outcome of the litigation. *Cascade Natural Gas Corp. v. El Paso Natural Gas Co.,* 386 U.S. 129, 135-36 (1967). A movant seeking to intervene has an interest relating to the subject of the litigation if as a practical matter the outcome of the litigation could impair the movant's interests. *San Juan Citizens' Alliance*, No. 13-cv-02466, 2014 U.S. Dist. LEXIS 138671, at *13-14 (D. Colo.) (Feb. 20, 2014).

Colorado has the requisite interest, with regulatory and property interests that will be affected the outcome of this litigation. *See Western Watersheds Project v. USFS*, No. 10-612-E-EJL-REB, 2012 U.S. Dist. LEXIS 11067, at *7-8 (D. Idaho) (granting Idaho's motion to intervene based on the sum of the state's sovereign and regulatory interests); *Fund for Animals v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003) (same, for Alaska); *Wyandotte Nation v. City of Kansas City*, 200 F. Supp. 2d 1279, 1288 (D. Kan. 2002) (same, for Kansas).

Pursuant to the express grant of authorities and duties to CPW and the Parks and Wildlife Commission, *see* Colo. Rev. Stat. §§ 33-1-104, 33-9-102-104, Colorado has an interest in managing and conserving all wildlife and other natural resources within its jurisdiction. CPW's statutory authority over wildlife

management within the state confers responsibility for protecting, preserving, and managing wildlife and wildlife habitats within the state. In addition, CPW is authorized to and has acquired properties for management of the Gunnison sage-grouse, and is authorized to and has entered into cooperative agreements with political subdivisions and private landowners for the benefit of the Gunnison sage-grouse. Colo. Rev. Stat. § 33-1-105. Finally, wildlife within the State of Colorado is the property of the state. Colo. Rev. Stat. § 33-1-101(2). *See Foster v. Gueory*, 655 F.2d 1319, 1324 (D.C. Cir. 1981) ("An intervenor's interest is obvious when he asserts a claim to property that is the subject matter of the suit …").

### c. Absent intervention, disposition of this action may impair or impede Colorado's ability to protect its interests.

If a court finds an intervenor applicant has an interest relating to the property or subject of the transaction at issue, it must then determine whether disposing of the action "may as a practical matter impair or impede the movant's ability to protect its interest …." Fed. R. Civ. P. 24(a)(2). In the context of a challenge to an administrative agency's decision, this burden is satisfied if "a decision in the plaintiff's favor would return the issue to the administrative decision-making process, notwithstanding the prospective intervenor's ability to participate in formulating any revised rule or plan." *WildEarth Guardians v. Nat'l Park Serv.*, 604 F.3d 1192, 1199 (10th Cir. 2010). Sufficient impairment "may even result from the 'stare decisis effect' of a district court's judgment." *Id.* (quoting *Utahns for Better Transp.*, 295 F.3d at 1116).

Plaintiffs seek broad relief in the form of multiple declarations that Federal Defendants' Listing Rule and Critical Habitat Rule are unlawful, as well as an order that Federal Defendants list the Gunnison sage-grouse as endangered and adopt a "fully protective" critical habitat rule. Complaint at 23-24. If granted, this relief will impact Colorado's varied interests in this lawsuit.

The ESA and its implementing regulations provide options for different levels of protection to be accorded to endangered vs. threatened species. First, under section 4(d) of the ESA, FWS has the option of adopting a special rule for a threatened species that provides flexibility regarding protections for the species. 16 U.S.C. § 1533(4)(d). These "4(d) rules" are not available for endangered species, and, among other things, can vastly simplify and streamline the permitting process for certain kinds of human activities that could be far more time-consuming and costly in the absence of the rule. Second, even in the absence of a 4(d) rule, states can enter into agreements with FWS under section 6 of the ESA that provide greater management flexibility for the State with respect to threatened species than is available for endangered species. *See* 50 C.F.R. § 17.31(b). Third, ESA's implementing regulations authorize FWS to issue a permit for an activity otherwise prohibited by the ESA under a wider range of circumstances for threatened than for endangered species. *Compare* 50 C.F.R. § 17.32 (permits for threatened species), 50 C.F.R. § 17.22 (permits for endangered species).

Colorado has an interest in preserving its role in managing wildlife and wildlife habitat within its borders, and ensuring that economic development in the state (including development of natural resources, and raising revenue from resource development on lands owned by the Colorado State Land Board) continues in a safe and environmentally responsible manner. These interests could be harmed were the Gunnison sage-grouse to be listed as "endangered." The flexibility available to FWS and the State for managing activities that impact threatened species would be displaced by the far more rigid prohibitions governing endangered species. In addition to reduced flexibility, Colorado and its employees and agents could face the possibility of increased liability associated with state-undertaken or funded projects such as habitat management and conservation programs aimed at non-listed species that share sagebrush habitat with the Gunnison sage-grouse.

Further, since Colorado has filed a separate lawsuit asserting that the Gunnison sage-grouse does not warrant protection under the ESA, a decision in favor of Plaintiffs in this action could as a practical matter preclude a favorable finding in Colorado's action that the Gunnison sage-grouse should not be listed as endangered or threatened.

Intervention is essential to allow Colorado adequately to protect these interests.

### d. Colorado's interests are not adequately represented

A party seeking to intervene as of right must demonstrate that its interests

are not adequately represented by existing parties to the litigation. The burden of satisfying this element is "minimal" and "[t]he possibility of divergence of interest need not be great in order to satisfy [this] burden." *Coal. of Arizona/New Mexico Counties*, 100 F.3d at 844-45 (internal quotations omitted). A prospective intervenor only needs to show "the *possibility* of inadequate representation." *WildEarth Guardians*, 573 F.3d 992, 996 (10th Cir. 2009) (emphasis added).

As discussed above, Colorado's sovereign interests are distinct from those of the Federal Defendants in this matter, and Colorado and the Federal Defendants do not share the same objective. Colorado disagrees with FWS's decision to list the Gunnison sage-grouse as threatened, and believes that management and conservation of the species should remain under the authority of the state and local governments. Colorado will not advocate for the reasonableness of the threatened listing, as FWS will. *See Cty. of San Miguel v. MacDonald*, 244 F.R.D. 36, 38-40 (D.D.C., 2007) (holding that even where intervenor-applicants and defendant FWS all shared an interest in upholding a decision that a species was not warranted for listing under the ESA, the interests of intervenor-applicants, a cattlemen's association and a business association, such as the advancement of local and state conservation measures, were not adequately represented by FWS). Therefore, although FWS is defending its decision against Plaintiffs' challenges, FWS does not share Colorado's interests and will not adequately represent them.

Federal courts should allow intervention "where no one would be hurt and greater justice could be attained." *Utah Assoc. of Counties*, 255 F.3d at 1250. Here, Colorado has multiple interests that would be adversely impacted if Plaintiffs prevail in this action, and Colorado's intervention would not prejudice any of the other parties. Therefore, Colorado's motion to intervene as of right should be granted.

## II. <u>Permissive Intervention</u>

Colorado believes it is entitled to intervene in this case as of right. However, should the court determine otherwise, Colorado should be permitted to intervene under Fed. R. Civ. P. 24(b), which gives the court discretion to permit intervention upon timely motion by a party who has a claim or defense that shares a common question of law or fact with the main action.

District courts have broad discretion to grant permissive intervention. *City of Stilwell v. Ozarks Rural Elec. Coop. Corp.*, 79 F.3d 1038, 1043, (10th Cir. 1996). Courts sometimes exercise their discretion to deny permissive intervention because it would delay, prejudice, or otherwise interfere with the rights of the parties. None of these applies here. As shown above, Colorado's motion is timely, and would not unduly delay the proceeding or prejudice the parties. Colorado's defenses share common questions of law and fact with those raised in this action, and Colorado injects no new issues or claims in its answer.

Moreover, Colorado is well-positioned to inform the court of the extensive conservation efforts undertaken by the state and its partners, and the success of those efforts. Because the state's biologists have the most expertise and experience in monitoring, researching, and managing Gunnison sage-grouse, and because the State has worked closely with FWS on sage-grouse management and conservation, Colorado brings a unique perspective to the proceedings that will help ensure that the administrative record is complete and the public interests at stake are clear.

In a case similar to this one, after a California district court denied intervention of right, it granted permissive intervention to intervenor-applicants seeking to defend a FWS decision to list a species as threatened against claims that the species should have been listed as endangered rather than threatened. *Ctr. for Biological Diversity v. United States Fish & Wildlife Serv.*, 2005 U.S. Dist. LEXIS 42275 (N.D. Cal. 2005). In that case, the intervenor-applicants were two counties, two cities, and a number of businesses and business associations. FWS had listed a species of salamander as threatened and issued a special 4(d) rule exempting most ranching activities from liability for causing harm to the salamander. The Center for Biological Diversity challenged the threatened listing and the ranching activity rule, arguing the salamander should have been listed as endangered. 2005 U.S. Dist. LEXIS at *3-4. Intervenor applicants sought to defend the decision not to list as endangered and to defend the rule regarding ranching activity. *Id.* at *4. In

14

granting permissive intervention, the court recognized the applicants' "keen interest" in use of the land that was affected by the listing and special rule.

As in the California salamander case above, Colorado should be granted permissive intervention because it has sovereign interests, regulatory interests, and property interests in the lands impacted by the agency decision being challenged here.

## CONCLUSION

For the foregoing reasons, Colorado respectfully requests that the Court grant its motion to intervene and permit its answer to be filed.

Dated this 3rd day of August, 2015.

                         CYNTHIA H. COFFMAN
                         Attorney General

                         s/ Lisa A. Reynolds
                         LISA A. REYNOLDS
                         Assistant Attorney General
                         TIMOTHY J. MONAHAN
                         First Assistant Attorney General
                         FREDERICK R. YARGER
                         Solicitor General

                         Ralph L. Carr Colorado Judicial Center
                         1300 Broadway, 7th Floor
                         Denver, Colorado  80203
                         Telephone:  (720) 508-6252
                         Fax:  (720) 508-6039
                         E-Mail:  lisa.reynolds@state.co.us

                         *Counsel for Plaintiff State of Colorado*