## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

**In re Gunnison Sage-Grouse Endangered Species Act Litigation**
Lead Case: Case No. 15-cv-130, consolidated with Case Nos. 15-cv-131 and 15-cv-286

Civil Action No. 1:15-cv-286
**This document relates to Civil Action 15-cv-286 only**

THE STATE OF COLORADO, BY AND THROUGH THE COLORADO DEPARTMENT OF NATURAL RESOURCES, THE DIVISION OF PARKS AND WILDLIFE , AND THE PARKS AND WILDLIFE COMMISSION

      Plaintiff,

v.

U.S. FISH AND WILDLIFE SERVICE,

DANIEL ASHE, in his official capacity as Director of the United States Fish And Wildlife Service, and

SALLY JEWELL, in her official capacity as Secretary of the United States Department of the Interior

Defendants

---

## COMPLAINT / PETITION FOR REVIEW OF AGENCY ACTION IN CIVIL ACTION

---

## INTRODUCTION

1.      Intervenor-Plaintiffs, the State of Utah and San Juan County, Utah, (collectively

"Intervenor-Plaintiffs" or "Utah"), brings this action against the United States Fish and Wildlife

Service ("FWS"); Daniel Ashe, in his official capacity as Director of FWS; and Sally Jewell in

her official capacity as Secretary of the United States Department of the Interior (collectively

"Defendants" or "FWS"). Utah seeks declaratory and injunctive relief to enforce the Endangered

Species Act ("ESA"), 16 U.S.C. §§ 1531—1544, the National Environmental Policy Act

("NEPA"), 42 U.S.C. §§ 4321, et seq., and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 500—596.

2.      Utah challenges the decision of the FWS to list the Gunnison sage-grouse (*Centrocercus minimus*) as a threatened species under the ESA, 16 U.S.C. § 1533.  *See* Threatened Status for Gunnison Sage-Grouse, Final Rule, 79 Fed. Reg. 69,192 (Nov. 20, 2014) ("Final Listing Rule").

3.      Utah also challenges FWS's designation of critical habitat for the Gunnison sage-grouse under the ESA. *See* Designation of Critical Habitat for the Gunnison Sage-Grouse, Final Rule, 79 Fed. Reg. 69,312 (Nov. 20, 2014) ("Final Critical Habitat Rule").

4.      The Gunnison sage-grouse is a ground-dwelling bird found in central and southwestern Colorado and southeastern Utah. It depends upon sagebrush communities for its survival.

5.      Within its current range, Gunnison sage-grouse is grouped in seven widely scattered populations.  The largest population, found in the Gunnison Basin in Gunnison County, Colorado, comprises approximately 86% of the population and covers almost two-thirds (63%) of the occupied habitat of the species.  The remaining 14% is divided among six groups, referred to as "satellite populations."  With one exception, all the satellite populations are located west of the Gunnison Basin.  The Gunnison Basin population is currently estimated to contain 3,978 birds; the largest satellite population, by contrast, located in San Miguel County, Colorado, has only 206 birds.  Three of the satellite populations have fewer than 100 birds.  The San Juan County, Utah population consists of approximately 100 birds.

6.      To date, the State and San Juan County have invested close to $18 million dollars in voluntary conservation programs, land acquisition, research, monitoring activities, habitat treatments, translocation, and predator control programs aimed at conservation of Gunnison

sage-grouse and its habitat.  State and county-led voluntary conservation programs have resulted in protection of over 20,000 acres of privately owned habitat.  Because over 90% of Gunnison sage-grouse habitat in Utah occurs on private land, the Utah Gunnison sage-grouse plan outlined strategies to encourage voluntary cooperation and participation by key landowners to conserve the species, while maintaining economic viability.  In combination with habitat areas that are federally-owned and managed, approximately 75% of occupied habitat in Utah has some level of protection.

7.      In addition to the above Utah efforts at conserving and protecting the species, through the cooperative efforts of local government, federal officials, and private landowners, Colorado has protected more than four-fifths of occupied Gunnison Sage-grouse habitat—83%—in the Gunnison Basin includes some level of protection for the species.

8.      These efforts have succeeded. The Gunnison Population has grown to exceed, by over 30%, population targets set in 2005 by a team of conservation biologists—including experts from FWS itself.  The Utah population of Gunnison sage-grouse was stable from 1992 to 2009, which included several significant drought years in San Juan County.  In 2010, an unusually severe winter resulted in reduced numbers of male grouse attending the leks the following spring.  A similar low lek attendance count occurred previously in 1986, followed by progressive increases in males at leks leading to stable levels in subsequent years.  The State of Utah strongly believes that the population will recover and increase to the previous stable levels in time.  Reliance upon the current population figures, due to the need to make a decision this year, would be an arbitrary and capricious application of facts.

9.      Despite these successful efforts, in November 2014, FWS issued a final rule listing the Gunnison sage-grouse as "threatened" throughout its range. *See* Final Listing Rule.

10.     The best available science, however, shows that the Gunnison sage-grouse is **not** threatened throughout its range.  Experts cited in the Final Listing Rule estimated that the risk of extinction over the next 50 years is *no more than 1%*.  The risk of extinction is not statistically significant and the finding that it is threatened is based upon speculation, conjecture and unsupportable scientific modeling.

11.     Therefore, FWS's decision to list the Gunnison sage-grouse as threatened was arbitrary, capricious, and not in accordance with law.

12.     FWS also issued a separate final rule designating over 1.4 million acres of land in Colorado and Utah as "critical habitat." *See* Final Critical Habitat Rule. Half of the 1.4 million acres FWS designated as "critical habitat" are currently **unoccupied** by Gunnison sage-grouse, and much of that land is currently unsuitable as habitat.

13.     FWS failed to show that currently occupied habitat is insufficient for species conservation or that the designated unoccupied habitat is essential to conservation of the Gunnison sage-grouse. This was a violation of federal law. 16 U.S.C. § 1532(5)(A)(ii); 50 C.F.R. § 424.12(e).

14.     FWS also failed to consider any alternatives to this 1.4-million-acre designation (aside from a "no action" alternative) and did not take a "hard look" at the environmental impacts of the designation. This violated both NEPA and the APA.

15.     Thus, the decision of FWS to designate critical habitat for the Gunnison Sage-grouse was arbitrary and capricious and not in accordance with law.

16.     Accordingly, Utah seeks judicial relief declaring that the Gunnison Sage-grouse does not satisfy the requirements of the ESA for listing as a "threatened species," and that listing the species at this time is not warranted.

17.     Utah further seeks judicial relief declaring that FWS violated the ESA, NEPA, and the APA when it designated critical habitat for the Gunnison sage-grouse.

18.     Utah respectfully requests that the Court vacate the Final Listing Rule and the Final Critical Habitat Rule and remand both with an order that the FWS comply with ESA, NEPA, and the APA.

## NOTICE OF RELATED CASES

19.     Two related cases are currently pending in the United States District Court for the District of Colorado: *Center for Biological Diversity, et al. v. U.S. Fish and Wildlife Serv.*, Case No. 1:15-cv-00130 (filed January 20, 2015) and *WildEarth Guardians, et al. v. Dan Ashe, et al.*, Case No. 1:15-cv-00131 (filed January 20, 2015). In the related cases, plaintiffs/petitioners challenge the Final Listing Rule on the grounds that the Gunnison sage-grouse should have been listed as endangered, rather than threatened. WildEarth Guardians also challenges the Final Critical Habitat Rule, arguing that the designation should have been more extensive.

20.     On May 1, 2015, this Court granted the joint motions to consolidate civil actions 15-cv-130, 131, and 286. All filings are now prepared in Case No. 15-cv-131. A consolidated and coordinated proposed Joint Case Management Plan was due and was filed on May 29, 2015. *See* Proposed Joint Case Management Plan by Defendants Penny Pritzker, Sally M.R. Jewell, Eileen Sobeck, NOAA Fisheries, U.S. Fish and Wildlife Service, Dan Ashe, Department of Commerce, U.S. Department of Interior, Dkt. 19 (Case No. 15-cv-00130)( May 29, 2015)("Proposed Joint

Case Management Plan").  The Proposed Joint Case Management Plan discussed certain

deadlines, including a cutoff date of August 3, 2015 for "requests for permissive intervention in

the current consolidated matters…"  *Id.*

21.     On January 17, 2015, this Court entered a Minute Order, ordering that a Joint Case

Management Plan conference be reset "after the roster of actual and proposed intervenors is

finalized."  Minute Order, Dkt. 22 (Case 15-cv-00130)(June 17, 2015).  The Minute Order

adopted the cutoff date of August 3, 2015 for requests for permissive intervention in this

consolidated matter.  *Id.*

22.     Utah has filed, with this Complaint/Petition for Review, a Motion to Intervene as

Plaintiffs in this consolidated matter and a Memorandum in Support of that Motion.

## PARTIES

23.     Utah is responsible for protecting, preserving, enhancing, and managing wildlife and

wildlife habitats within the state.  U.C.A § 23-13-3.  Wildlife within the State of Utah is the

property of the state.

24.     The Utah Division of Wildlife Resources is authorized to, and has acquired, properties

for management of the Gunnison sage-grouse, and is authorized to, and has entered into,

cooperative agreements with political subdivisions and private landowners for the benefit of the

Gunnison sage-grouse. U.C.A. §§ 23-21-1, 22-1.

25.     By listing the Gunnison sage-grouse as threatened and designating critical habitat, FWS

interfered with Utah's primary role in wildlife management. The listing and designation also

impair the wildlife management programs Colorado and Utah have developed for Gunnison

sage-grouse management. For example, state wildlife management programs directly impacting

6

Gunnison sage-grouse habitat or that have the potential to disturb any individual sage-grouse may now be conducted only with the prior approval of FWS. This applies to habitat management for other species inhabiting sagebrush areas, such as deer and elk. Moreover, the Utah Division of Wildlife Resources may no longer continue to enroll private landowners in a voluntary conservation program it has been administering since 2006.

26.     Defendant FWS is a federal agency within the United States Department of the Interior with the responsibility for administering the ESA and has primary authority for day-to-day management of the ESA with respect to non-marine species.

27.     Defendant Daniel Ashe is the Director of FWS, and is sued in his official capacity.

28.     Defendant Sally Jewell is the Secretary of the United States Department of the Interior. As Secretary of Interior, Secretary Jewell has ultimate responsibility for implementation of the ESA. She is sued in her official capacity.

## JURISDICTION AND VENUE

29.     This action arises under federal law, and specifically arises under the ESA, 16 U.S.C. §§ 1531—1544, NEPA, 42 U.S.C. § 4321 *et seq.*, and the APA, 5 U.S.C. §§ 500—596. 8

30.     This court has jurisdiction over this action under 16 U.S.C. § 1540(c) (granting jurisdiction to the district courts over "any actions arising under" the ESA) and 28 U.S.C. § 1331 (granting the district courts federal question jurisdiction).

31.     As required by 16 U.S.C. § 1540(g), Utah provided Defendants Jewell and Ashe with written notice of their violations of the ESA on December 24, 2014 via electronic and certified mail. More than 60 days have passed since notice was provided, and Defendants have not taken action to address the violations.

32.     Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(e) because FWS is an agency of the United States with multiple offices in Colorado, Defendants Jewell and Ashe are employees or officers of the United States, and a substantial part of the events giving rise to this action occurred in Colorado.  Specifically, the final rules under challenge were written by a regional office of FWS located in Lakewood, Colorado. Further, the Gunnison sage-grouse is found primarily in Colorado, and is protected by numerous conservation plans developed within Colorado, many of which are overseen or administered by Plaintiff.

## THE ENDANGERED SPECIES ACT

### Listing a Species Requires Using the "Best Scientific and Commercial Data"

33.     Under Section 4 of the ESA, FWS must determine whether species are eligible for listing as "endangered" or "threatened" with extinction. 16 U.S.C. § 1533(a). Listing a species triggers ESA protection.

34.     A species is "threatened" if it is likely to become in danger of extinction within the foreseeable future throughout all or a significant portion of its range. 16 U.S.C. § 1532(20); 50 C.F.R. § 424.02(m).

35.     A species is "endangered" if the species is presently in danger of extinction throughout all or a significant portion of its range. 16 U.S.C. § 1532(6); 50 C.F.R. § 424.02(e).

36.     FWS makes its assessment regarding whether a species is eligible for listing "solely on the basis of the best scientific and commercial data available," after reviewing the status of the species and considering state and local conservation efforts. 16 U.S.C. § 1533(b)(1); 50 C.F.R. § 424.11(f).

37.     The ESA imposes express prohibitions on "take" of the species. A "take" includes an action or attempt to "harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect" a species.  16 U.S.C. § 1532(19)

38.     Once a species is listed as threatened or endangered, the "take" prohibitions drastically affect actions that may potentially affect a species or its habitat, including any actions to "harm" members of the species. *Id.* "Harm" is broadly defined to include "significant habitat modification or degradation." 50 C.F.R. § 17.3.

39.     Scientific workers retained by FWS to review and provide expert commentary upon the evidence presented and the regulatory structure affecting the Gunnison sage-grouse identified fundamental flaws in the Service's data, methodology, and analysis.  Thus, FWS failed to assess listing the Gunnison sage-grouse using the "best scientific and commercial data available. 16 U.S.C. § 1533(b)(1).

### State and Local Conservation Efforts Must Be Evaluated

40.     FWS is required to take into account efforts made by states and their political subdivisions to protect the species and its habitat when determining whether to list a species. 16 U.S.C. § 1533(b)(1)(A).

41.     FWS has issued a policy to encourage agreements to voluntarily conserve species and their habitat before they are listed. Final Policy on Candidate Conservation Agreements with Assurances, 64 Fed. Reg. 32,726-01 (June 17, 1999).  These agreements are called "Candidate Conservation Agreements with Assurances," or "CCAAs."  The purpose of the CCAAs is to make listing a species unnecessary through coordination of conservation efforts with states, private landowners, and other non-federal partners. Using Existing Tools To Expand

Cooperative Conservation for Candidate Species Across Federal and Non-Federal Lands,

https://www.fws.gov/endangered/esa-

library/pdf/CCACCAA%20%20final%20guidance%20signed%208Sept08.PDF.

42.     Specifically, the policy encourages states and private parties who own land containing

habitat for candidate species to undertake measures to implement mutually-agreed-upon

conservation measures.  In return, participants receive assurances that they will not be required to

undertake additional conservation measures should the species be listed in the future. 64 Fed.

Reg. at 32,733-34.

43.     FWS must approve a CCAA before it takes effect. Approval may be granted if "the

benefits of the conservation measures implemented by a property owner under [the CCAA],

when combined with those benefits that would be achieved if it is assumed that conservation

measures were also to be implemented on other necessary properties, *would preclude or remove*

*any need to list the species*." 64 Fed. Reg. at 32,726 (emphasis added). Thus, CCAAs are

designed to preclude the need to list a species.

44.     In 2003, FWS adopted a policy to guide its evaluation of voluntary conservation efforts

such as CCAAs when considering whether to list a species. Policy for Evaluation of

Conservation Efforts, 68 Fed. Reg. 15,100-02 (Mar. 28, 2003).

45.     Under this policy, two primary criteria guide evaluation of conservation efforts in a

listing decision: (a) the certainty that a conservation effort will be implemented; and (b) the

certainty that the effort will be effective. 68 Fed. Reg. at 15,113.

**Designating Critical Habitat**

46.     Once FWS determines that a species will be listed as endangered or threatened, FWS must then decide, what, if any, geographic areas are essential to the species' conservation. FWS may propose to designate those areas as "critical habitat." 16 U.S.C. § 1533(a)(3).

47.     Critical habitat may be designated in either occupied or unoccupied areas of the species' range. 16 U.S.C. § 1532(5)(A).

48.     However, FWS may designate unoccupied areas "only when a designation limited to [a species'] current range would be inadequate to ensure the conservation of the species" and that all designated unoccupied areas are "essential for the conservation of the species." 50 C.F.R. § 424.12(e); 16 U.S.C. § 1532(5)(A)(ii). Thus, designation of *unoccupied* areas is prohibited unless the designation of *occupied* lands is "insufficient" and designation of unoccupied lands is "essential."

49.     When determining which geographic areas should be designated as critical habitat, FWS is required to consider the economic impacts of a proposed designation by preparing an Economic Impact Analysis. 16 U.S.C. § 1533(b); 50 U.S.C. § 424.19.

50.     Furthermore, NEPA requires FWS to study and consider the direct and indirect environmental impacts of a proposed critical habitat designation. *Catron County Bd. Of Comm'rs v. U.S. Fish & Wildlife Serv.*, 75 F.3d 1429, 1433 (10th Cir. 1996).

**Judicial Review**

51.     Final listing decisions and designations of critical habitat are reviewable under the Administrative Procedure Act, 5 U.S.C. § 505, *et seq.* Under the APA, a reviewing court may set

aside an administrative decision "if the decision is arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A).

52.     An agency's failure to draw rational conclusions from the evidence before it constitutes arbitrary and capricious action. *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

### SPECIFIC ALLEGATIONS REGARDING THE UNLAWFUL LISTING AND DESIGNATION

### The Gunnison sage-grouse (*Centrocercus minimus*)

53.     The Gunnison sage-grouse is a chicken-sized ground-dwelling bird that depends on sagebrush communities, including native grasses and forbs (i.e., herbaceous non-grass plants), for food and cover. The species is well-known for its elaborate male courtship displays, in which males and females congregate on open areas called "leks."

54.     The Gunnison sage-grouse was officially designated as a distinct species in 2000. It is currently found only in southwestern Colorado and southeastern Utah.  In contrast, the Greater sage-grouse (*Centrocercus urophasianus*) is more widespread, inhabiting parts of north-central and northwestern Colorado, and eastern, northern and western Utah as well as parts of ten other western states.

55.     The Gunnison sage-grouse is currently grouped in seven widely scattered populations. The largest population is located in the Gunnison Basin (Gunnison and Saguache Counties, Colorado). It comprises approximately 84% of all known birds and covers 62% of the occupied habitat of the species. In 2014, this population was estimated at 3,978 individuals. Final Listing Rule at 69,198.

56.     The remaining 16% of the species is divided among six "satellite populations," the largest

of which, located in San Miguel County, Colorado, has only an estimated 206 birds. Final

Listing Rule at 69,198.  Three of the satellite populations, including the Monticello/San Juan

County, Utah, population, contain fewer than 100 birds.

57.     Estimates of the historic range of the Gunnison sage-grouse vary widely, are highly

uncertain, and are based on anecdotal and unverifiable sources of information. At various times,

the species may have occupied parts of Arizona and New Mexico, as well as parts of Colorado

and Utah. At all times, however, the species occupied only portions of the total area; it never

occupied the entire range at a single point in time.

### Pre-Listing Conservation Efforts

58.     The State and San Juan County have spent significant time, money, and effort advancing

our understanding of the Gunnison Sage-grouse population in San Juan County.  They have

invested close to 18 million dollars in voluntary conservation programs, land acquisition,

research, monitoring activities, habitat treatments, translocation, and predator control programs

aimed at conservation of the Gunnison sage-grouse and its habitat.

59.     In 1996, San Juan County, Utah established a local working group to identify and

implement conservation strategies to reverse the decline of sage-grouse populations in the

county. This group consists of representatives from the county, state, and federal government, as

well as interested private landowners.

60.     The San Juan County Local Working Group (SJCLWG) completed a Conservation Plan

in 2000. It contains a detailed habitat conservation assessment specific to the Utah Gunnison

sage-grouse population as well as conservation strategies to ensure the continued viability of the

bird in Utah. *See* Gunnison Sage Grouse <u>Centrocercus minimus</u> Conservation Plan San Juan County, Utah (May 2000), http://wildlife.utah.gov/uplandgame/pdf/gsgcp.pdf.

61.     State and county-led voluntary conservation programs have resulted in protection of approximately 28,000 acres of privately owned habitat.  Because over 90% of Gunnison sage-grouse habitat in Utah occurs on private land, the Utah Gunnison sage-grouse plan outlined strategies to encourage voluntary cooperation and participation by key landowners to conserve the species, while maintaining economic viability.  In combination with areas of habitat that is federally-owned and managed, approximately 75% of occupied habitat has some level of protection.

62.     Additionally, two master's theses and a doctoral dissertation have been completed, which identified important Gunnison Sage-grouse use areas and limiting factors in San Juan County, Utah. From these studies, Utah believes CRP lands provide some of the most important habitat for Gunnison sage-grouse in Utah.

63.     In 2005, a group of conservation biologists drawn from numerous state and federal agencies—including San Juan Co., Utah and FWS—prepared an extensive and detailed Rangewide Conservation Plan ("RCP") for the Gunnison sage-grouse. Gunnison Sage-grouse Rangewide Conservation Plan (April 2005),

http://cpw.state.co.us/learn/Pages/GunnisonSagegrouseConservationPlan.aspx

64.     The purpose of the RCP was "to protect, enhance, and conserve Gunnison sage-grouse populations and their habitats" by "providing a rangewide perspective, guidance and recommendations to local working groups and other interested or affected parties and stakeholders." The plan provided for "consistent and timely habitat improvements and

population expansions" that would "eventually remove this species from listing consideration with the USFWS."

65.      The RCP set a goal of developing 5,800 acres of additional habitat in Utah and linking the habitat in Utah to the population in Dolores County, Colorado.

66.      Since 2005, Utah has protected habitat on private ground through the CRP. Approximately 28,000 acres of land have been enrolled in this program. Additionally, the Nature Conservancy purchased 1,000 acres of habitat adjacent to an active lek site and is currently conducting major habitat enhancement projects.

67.      The Utah Division of Wildlife Resources ("UDWR") is the principal agency responsible for management and conservation of species of concern, including the Gunnison sage-grouse. UDWR directs numerous ongoing programs, including administering a Candidate Conservation Agreement with Assurances ("CCAA") agreement aimed at Gunnison sage-grouse conservation, and providing financial assistance for new conservation easements on private lands.  UDWR staff biologists provide population counts and other raw data concerning the status of the species in Utah, and conduct many ongoing research projects critical to a more nuanced understanding of the needs of and threats to the.  In cooperation with Colorado, which has been a leader in Gunnison sage-grouse research and conservation efforts throughout the species' range, UDWR and their counterparts in Colorado have worked closely with local communities and other stakeholders, to generate invaluable data and analysis and to enhance the effectiveness of conservation programs.

68.      The State of Utah is an active participant in conservation actions regarding Gunnison sage-grouse.  For example, the State has

a.  become a signatory party to the Gunnison Sage-grouse Rangewide Conservation Plan;

b.  implemented the "Community Based Conservation Program" that enhances coordination and communication between community based adaptive resource management working groups, and private and public partners;

c.  worked directly in San Juan County, Utah to bring together landowners, local governmental officials, state and federal agencies and universities to plan and execute cooperative research and habitat projects;

d.  participated in the San Juan County Gunnison Sage-grouse Working Group;

e.  has listed the on Utah's Sensitive Species List pursuant to Administrative Rule R657-48; and

f.  established a Utah state "Conservation Agreement" regarding conservation measures for Gunnison sage-grouse in 2005.

### The Listing and the Critical Habitat Designation

69.   In 2000, FWS recognized the Gunnison sage-grouse as a distinct species.  That same year, FWS received a petition to list it under the ESA. FWS determined that the species was warranted for listing but the listing was precluded by higher priority actions.

70.   Upon further study, in 2006 FWS determined that the species did not warrant protection under the ESA. Final Listing Determination for the Gunnison Sage-Grouse as Threatened or Endangered, 71 Fed. Reg. 19,954 (April 18, 2006).

71.     A coalition of conservation groups and others challenged this determination, and the parties subsequently reached an agreement under which FWS agreed to complete a new status review for the Gunnison sage-grouse by June 2010.

72.     In September 2010 the FWS determined that listing the Gunnison sage grouse was warranted but precluded by other priorities, and the grouse was placed on the Candidate Species list. Determination for the Gunnison Sage-grouse as a Threatened or Endangered Species, 75 Fed. Reg. 59804 (Sept. 28, 2010).

73.     Notwithstanding the extraordinary conservation efforts undertaken by Utah, San Juan County, Colorado, and private landowners, in January 2013 FWS published a rule proposing to list the Gunnison sage-grouse as endangered throughout its range, along with a rule proposing to designate 1.7 million acres of critical habitat for the species. Endangered Status for Gunnison Sage-Grouse, 78 Fed. Reg. 2486 (Jan. 11, 2013).

74.     Utah and San Juan County provided extensive comments on the proposed rules explaining why ESA protection for the species was not warranted.  *See* Gunnison Sage-Grouse Listing Determination Letter, Dec. 2, 2013; Docket No. FWS-R6-ES-2012-0108 Letter, April 2, 2013. A copy of the April 2, 2013 Letter is attached as Exhibit "A."

75.     In November 2014, FWS published a final rule listing the Gunnison sage grouse as "threatened" under the ESA. *See generally* Final Listing Rule. At the same time, FWS published a final rule designating approximately 1.4 million acres of critical habitat across nine counties in Colorado and two counties in Utah. *See generally* Final Critical Habitat Rule.

76.     The Final Listing Rule dismissed many of the successful conservation efforts implemented by Utah, local governments, and private landowners.

77.     The Final Listing Rule does not provide a detailed analysis pursuant to the Policy for

Evaluation of Conservation Efforts, 68 Fed. Reg. 15,100 (Mar. 28, 2003), and the discussion it

does provide does not recognize the certainty and effectiveness of many of the conservation

efforts whose success has been demonstrated over the past decade.

78.     Without providing meaningful explanation, the Final Listing Rule states that existing

regulatory mechanisms do not adequately address the substantial threats faced by the species.

**FWS's Designation of Habitat Was Improper**

79.     In the Final Listing Rule, FWS primary listing rationale is habitat loss and fragmentation

caused by housing development and other commercial development, and the associated

infrastructure, such as roads and power lines. FWS' determination of the magnitude of this threat

is not based on the best available scientific information, and was identified as "fundamentally

flawed" by scientific workers retained by FWS to review and provide expert commentary upon

the scientific evidence and analysis surrounding the status of the species. .

80.     FWS's designation of critical habitat for the Gunnison sage-grouse was deficient.

*Failure to Consider Alternatives*

81.     Before designating critical habitat for the Gunnison sage-grouse, FWS prepared an

Environmental Assessment, available at

http://www.fws.gov/mountainprairie/species/birds/gunnisonsagegrouse/GUSG_FinalEA_111220

14.pdf.

82.     On November 10, 2014, FWS issued a Finding of No Significant Impact, determining

that the proposed critical habitat designation would not have a significant impact on the

environment. *See*

http://www.fws.gov/mountainprairie/species/birds/gunnisonsagegrouse/GuSG_FONSI_1112201
4.pdf.

83.    FWS only considered two alternatives, a No Action Alternative that would not designate

any critical habitat, and the Proposed Action Alternative that would designate approximately 1.7

million acres in Utah and Colorado. In violation of Department of Interior directives, FWS did

not study any variations on its proposed action, nor did it consider any other alternatives. Dep't

of Interior, Fish and Wildlife Service Manual, 550 FW 1 at 20.

***Improper Designation of Unoccupied Habitat***

84.    In the Final Critical Habitat Rule, FWS designated 1,429,551 acres of critical habitat, of

which 766,462 acres are currently unoccupied by Gunnison sage grouse.

85.    These unoccupied areas were summarily designated by FWS as *potential* and *vacant or*

*unknown habitat*. Much of this habitat is either not suitable, nor ever will be suitable as habitat

for Gunnison sage-grouse populations.

86.    In contrast, areas mapped as *occupied habitat* by UDWR and the Colorado Department of

Parks and Wildlife were identified as such based upon 10 years of mapping and associated

scientific research.

87.    FWS also made no showing that the extensive tracts of unoccupied areas designated as

critical habitat are essential to the conservation of the species or that currently occupied habitat is

insufficient for conservation of the species.

88.    FWS identified some unoccupied areas as habitat that "could be suitable for occupation

of sage-grouse if practical restoration were applied." 79 Fed. Reg. at 69,335. These areas are

"most commonly former sagebrush areas overtaken by pinyon-juniper woodlands." *Id.* FWS did

not make a showing that restoration of these areas is feasible, much less practical. Some of the areas contain extensive stands of old-growth pinyon-juniper. Destruction of these stands to encourage growth of sagebrush is prohibitively expensive and unlikely to provide long-term sagebrush habitat.

89.     The designated critical habitat also includes "vacant or unknown areas" that have not been adequately inventoried. 79 Fed. Reg. at 69,335.

90.     The ESA and Executive Order 12866 require that designated critical habitat be based on the best scientific and economic data and calculations available and focus on the minimum amount of land that is essential for the conservation of the species.

91.     FWS failed to describe or provide any replicable analysis or provide any data that demonstrates that this *potential* and *vacant or unknown habitat* is essential for the conservation of the species. *See* Gunnison Sage Grouse Plan 2005, Conservation Assessment p. 54.

***Misuse of the term "Fragmentation" with Respect to Habitat***

92.     FWS misused the term "fragmentation" when evaluating habitat for the Gunnison Sage-grouse.

93.     Fragmentation of habitat occurs as the result of a barrier that prevents an animal from traveling from one habitat patch to another, and "is a function of the composition and configuration of habitat" and non-habitat in the landscape. *See* Letter to Dan Ashe from PLPCO Dec. 2, 2013.  A copy of the December 2, 2013 Letter is attached as Exhibit "B."

94.     FWS did not evaluate habitat and potential habitat fragmentation according to this functional and taxon-centric definition. Rather, FWS substituted its evaluation based on:

       a.   the asserted loss of "potential historic range,"

    b.   a definition based upon physical "separation or splitting apart of previously contiguous, functional habitat components," and

    c.   statistical analysis based upon information derived generally from the entire range of both Greater and Gunnison Sage-grouse species.

95.    Based on this flawed definition of habitat "fragmentation," FWS incorrectly assumed that all human (anthropogenic) structures and features cause fragmentation of habitat.  This allowed FWS to avoid studying the actual response of Gunnison Sage-grouse to human features in these actual habitats, which may not be a barrier at all.

### Failure to Consider Economic Impacts

96.    The Economic Impact Analysis of the proposed critical habitat designation forecast an annual loss of economic activity resulting from lost oil and gas production in Utah of $210,000 and approximately $62,000 in tax revenue. The analysis also showed a $1.5 million annual regional impact from grazing reductions associated with the designation of critical habitat.

97.    FWS improperly based its economic impact analysis on the effects to the national economy.  By using a national standard, FWS illegally diluted the significant local and regional economic effects of the proposed critical habitat designation in San Juan County.  *See* Executive Order 12866 (Sept. 20, 1993), section 3(f)(1), section 1(b)(7), and section 1(b)(11).

98.    Through Executive Order 12866, the President directed FWS to examine its listing decision for economic impact on small communities, jobs, and local governments by considering the best reasonably obtainable scientific and economic information available.  This analysis can only be derived by considering the economic contribution from the actual "particular lands" set out in the proposed rule.

99.     San Juan County has 5.2 million acres of land. In San Juan County, FWS proposes 145,000 acres for critical habitat, of which 138,225 acres (95%) are on private surface lands. This represents 35% of the private land in San Juan County.

100.    Portions of San Juan County surround and within the proposed critical habitat area can be classified as economically depressed, disproportionately Native American and in need of every possible strategic advantage to attract new jobs and provide an economic tax base for the County to fund public programs.

101.    FWS's assessment does not adequately consider the economic effects on farmers, landowners, oil/gas operators, and state agencies managing roads and recreation visitors  For example, the Economic Impact Analysis:

    a.  fails to account for potential losses to ranch value and grazing permits if critical habitat designation results in a reduction in allowed or actual Animal Unit Months. Private ranches depend on federal grazing allotments, and the potential economic loss to these particular small business entities was not properly evaluated by FWS;

    b.  dismisses the loss of development potential of oil/gas and the loss of jobs and income derived from its production in San Juan County. In 2007, the indirect and induced effects of the oil/gas industry in San Juan County amounted to 135 jobs and nearly $3.1 million in wages in an area desperately in need of economic development.

     c.   does not consider the impact on pending wind energy projects such as the Eco-Power Wind Farm project, which is estimated to provide 21 full time permanent jobs and an average salary of $50,000.

102.   The FWS is required to consider economic issues during the designation of critical habitat.  The above data demonstrate that the designation of critical habitat could have a huge, disproportionate impact on this portion of rural Utah.  Given the lack of any clear advantage to the species from a critical habitat designation in this part of Utah, and the need to continue working with private landowners in order to achieve realistic protections for the species, the Service must pull back its proposed designation of critical habitat from these lands.

103.   The current economic impact study is unacceptable because it fails to consider the impacts of critical habitat because, among other failures, it presupposes the economic effects of a listing as a given.  The Service must provide a full economic impact analysis to fulfill the requirements of law.

**First Claim for Relief:**
**Violation of Section 4 of the Endangered Species Act by Listing the**
**Gunnison Sage-grouse as Threatened**

104.   Plaintiff incorporates by reference Paragraphs 1-101 of this Complaint as if restated here in full.

105.   Defendants violated the ESA by failing to use the best available scientific data and information when considering whether to list the Gunnison sage-grouse under section 4 of the ESA, and by failing to draw rational conclusions from the evidence before them.

106.    Defendants arbitrarily and capriciously determined that the Gunnison sage-grouse is threatened throughout its range when the vast majority of the population—i.e., the Gunnison Basin Population—is stable and thriving, and not highly susceptible to foreseeable threats.

107.    Defendants arbitrarily and capriciously failed to acknowledge or give sufficient weight to the certainty and efficacy of conservation efforts, including existing regulatory mechanisms.

108.    Accordingly, Defendants' Final Listing Rule is arbitrary and capricious, an abuse of discretion, and not in accordance with law.

**<u>Second Claim for Relief:</u>**
**Violation of Section 4 of the Endangered Species Act by Improperly Designating Critical Habitat**

109.    Plaintiff incorporates by reference Paragraphs 1-106 of this Complaint as if restated here in full.

110.    Section 4 of the ESA mandates that unoccupied areas may only be designated as critical habitat upon a finding that they are essential to the conservation of the species.

111.    ESA regulations require that unoccupied areas may only be designated upon a determination that protection of occupied areas is insufficient for the conservation of the species.

112.    Defendants designated unoccupied areas as critical habitat without showing that protection or special management of those areas is essential to the conservation of the species or that designation of only occupied areas was insufficient for the conservation of the species.

113.    Defendants arbitrarily dismissed the results of the Economic Impact Analysis and did not consider the local economic impact of a decision to list the Gunnison sage-grouse.

114.    Accordingly, Defendants' designation of critical habitat for Gunnison sage grouse is arbitrary and capricious, an abuse of discretion, and not in accordance with law.

**Third Claim for Relief:**
**Violation of the National Environmental Policy Act and the**
**Administrative Procedure Act**

115.    Plaintiff incorporates by reference Paragraphs 1-112 of this Complaint as if restated here in full.

116.    NEPA requires that FWS take a hard look at the direct and indirect environmental impacts of its decision to designate critical habitat for the Gunnison sage-grouse.

117.    FWS guidance requires that its Environmental Assessment include the proposed action, a no action alternative, and reasonable alternatives that satisfy the purpose and need of the proposed action.

118.    Defendants' decision to study only the proposed action and a no-action alternative resulted in a failure to take a hard look at the impacts of the proposed action, violated NEPA, and is arbitrary and capricious and an abuse of discretion in violation of the APA.

**REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that this Court enter a judgment in favor of Plaintiffs and against Defendants as follows:

1.    Declare that the Gunnison sage-grouse does not satisfy the requirements of the ESA for listing as a "threatened species" and that listing the species at this time is not warranted; 30

2.    Declare that Defendants abused their discretion and acted arbitrarily, capriciously, and not in accordance with the ESA in issuing the Final Listing Rule and the Final Critical Habitat Rule;

3.      Declare that the Final Critical Habitat Rule is unlawful because Defendants did

not comply with NEPA;

4.      Vacate the Final Listing Rule and the Final Critical Habitat Rule;

5.      Remand both rules to FWS for further proceedings consistent with the Court's

findings;

6.      Award Plaintiff its costs and expenses, including reasonable attorneys' fees under

the citizen suit provision of the ESA and/or the Equal Access to Justice Act; and

7.      Grant Plaintiff such other relief as the Court deems just and equitable.


Dated this 3rd day of August, 2015.

SEAN D. REYES
Attorney General

s/ Kathy A.F. Davis
KATHY A.F. DAVIS
Assistant Attorney General
BRITTANY L. WILSON
Special Assistant Attorney General
5110 State Office Building
Salt Lake City, Utah 84114
Telephone: (801) 537-9819
E-Mail: kathydavis@utah.gov
         brittanywilson@utah.gov
*Counsel for Proposed Intervenor-Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on August 3, 2015, the undersigned electronically transmitted the

**COMPLAINT / PETITION FOR REVIEW OF AGENCY ACTION** to the Clerk's Office

using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the

following CM/ECF registrants:

Amy Rae Atwood  atwood@biologicaldiversity.org
Brad Arthur Bartlett, IV  bbartlett@law.du.edu
Laurence J. Lucas  llucas@advocateswest.org
Sarah Kate McMillan  smcmillan@wildearthguardians.org
Talasi Banas Brooks  tbrooks@advocateswest.org
Todd Christopher Tucci  ttucci@advocateswest.org
Frederick Richard Yarger  fred.yarger@state.co.us
Lisa Anne Reynolds  lisa.reynolds@state.co.us
Joanna Kathryn Brinkman  Joanna.brinkman@usdoj.gov
Rickey Doyle Turner  rickey. turner@usdoj.gov
David Mark Baumgarten  dbaumgarten @gunnison county.org
Deborah Lynn Freeman  dfreeman@troutlaw.com

s/ Kathy A.F. Davis