# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

IN RE GUNNISON SAGE-GROUSE        Civil Action No. 1:15-cv-130-AP
ENDANGERED SPECIES LITIGATION

This document relates to all consolidated cases

---

## PLAINTIFFS WILDEARTH GUARDIANS' AND CLAIT E. BRAUN'S
## SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO
## COMPEL COMPLETION OF THE ADMINISTRATIVE RECORD

---

## INTRODUCTION

     Federal Respondent U.S. Fish and Wildlife Service's recent submissions further

demonstrate that it has improperly invoked the attorney-client privilege to withhold 99

"standalone" documents from the Administrative Record because the Service cannot even

identify the source, author, or recipients of these documents.[1]  The Service also failed to fulfill its

obligation to segregate and disclose any non-privileged information that may be contained in the

thousands of pages of "standalone" documents.  Since the Service cannot meet it burden of

establishing the propriety of invoking the attorney-client privilege under these circumstances,

and because the Service has made no effort to segregate non-privileged information within the

"standalone" documents, this Court must order full disclosure of these documents.  *Martinez v.*

*Social Security Admin.*, Case No 07-cv-01156-MSK-BNB, 2007 WL 4458121, *2 (D. Colo. Dec.

---

[1]  According to the U.S. Fish and Wildlife Service (the Service), so-called "standalone" documents are documents "submitted to the person who prepared the GUSG Administrative Record as standalone documents rather than as attachments to emails."  *See* Second Declaration of Michael G. Thabault (Second Thabault Decl.), ¶ 7 (ECF 92-2).  *See also* Declaration of Daniel Paul Reinkensmeyer (Reinkensmeyer Decl.), ¶ 2 (ECF 53-1) (stating Reinkensmeyer "coordinated and personally participated in the compiling, organizing, and producing the documents that make up the Administrative Record").

13, 2007) ("A district court that simply approves the withholding of an entire document without entering a finding on segregability, or lack thereof, errs.") (internal quotations omitted).

Moreover, the Service has not demonstrated that each of the now 88 separate individuals with access to privileged information had a "need to know" of the confidential attorney-client communications. Instead, the Second Declaration of Michael G. Thabault simply rearranges then repeats the same arguments he made earlier justifying the Service's withholdings. *See* Second Thabault Decl., ¶¶ 11-18. Thabault fails to even acknowledge, however, that between the time he filed his first and second declarations, the number of individuals with access to privileged information swelled from 59 to 88. *Compare* Response to WildEarth Guardians' Motion to Compel Completion of the Administrative Record (Resp. Br.), p. 3 (noting at least 59 Service personnel had access to privileged information) (ECF 80), *with* Privilege Log Names List (identifying 88 personnel with access to privileged information) (ECF 92-3).

The Service has also not resolved the issues this Court specifically raised during the March 2016 hearing on Guardians' motion. For example, the Court specifically ordered the Service to identify when each individual with access to confidential information (n=88) served on the Gunnison sage-grouse team. The Court ordered this supplemental information to ground truth the Service's claim justifying the "unusual[ly]" large number of personnel with access to privileged information. *See* Declaration of Michael G. Thabault (First Thabault Decl.), ¶ 16 (ECF 80-1) (explaining that there "was significant turnover in the individuals serving on the different GUSG teams"). The new Privilege Log Names List conspicuously fails to include this required information, and Thabault's new declaration does not fill in these evidentiary gaps. *See* Second Thabault Decl.; Privilege Log Names List.

For the reasons set forth below and detailed in Guardians' briefs, this Court should order the Service to complete the administrative record with all withheld or redacted documents.

## ARGUMENT

I.    **The Service Cannot Withhold the "Standalone" Documents From Disclosure Because the Service Cannot Identify the Source, Author or Recipients of these Documents.**

The Service improperly withheld 99 so-called "standalone documents." Second Thabault Decl., ¶ 7; Revised Privilege Log (ECF 92-1) (identifying standalone documents). As previously noted, the "*sine qua non* for invocation of the [attorney-client] privilege is that the communications in question were intended to be confidential." *Coorstek, Inc. v. Reiber*, Case No. 08-cv-01133, 2010 WL 1332845 (D. Colo. April 5, 2010), *quoting Gottlieb v. Wiles*, 143 F.R.D. 241, 249 (D. Colo. 1992). *See also Coastal States Gas Corp. v. Department of Energy*, 617 F2d 854, 863 (D.C. Cir. 1980) ("a fundamental prerequisite to assertion of the [attorney-client] privilege: confidentiality both at the time of the communication and maintained since"). Without information identifying the author and recipient of a document, there is no way to establish the communications were intended to be confidential. *Judicial Watch v. U.S. Department of Homeland Security*, 841 F.Supp.2d 142, 155 (D.D.C. 2012).

In *Judicial Watch*, a government watchdog group sought documents relating to recent changes in federal immigration enforcement priorities, and the agency invoked the attorney-client privilege to withhold a series of documents. The court rejected the agency's effort to shield these documents, finding that the agency "does not even identify the author(s) and recipient(s), let alone explain the circumstances surrounding the communication. Under these circumstances, the Court cannot meaningfully judge whether the privilege applies." *Id.*

This Court should follow *Judicial Watch*, and hold the Service's standalone documents

similarly lack the requisite indicia of confidentiality. Like in *Judicial Watch*, the Service does not disclose who authored these standalone documents, and Thabault claims only that the standalone documents "cannot be ascribed to an individual author because they are the work product of multiple individuals in the referenced agency and/or office, and were prepared on behalf of the named agency." Second Thabault Decl., ¶ 8. But Thabault identifies none of "these multiple individuals," and he similarly fails to identify any individual who reviewed, commented upon or otherwise edited any one of these 99 standalone documents. *Id*. Reinkensmeyer also fails to identify the author of these standalone documents, even though he was the Service employee charged with "compiling, organizing, and producing" the Administrative Record. Reinkensmeyer Decl., ¶ 2.

The Service does not even know who submitted these documents to the Administrative Record. Second Thabault Decl., ¶ 7 ("[t]he Service cannot say precisely which current or former Service employee is the source of these standalone documents"); Reinkensmeyer Decl., ¶ 2 (failing to identify source of standalone documents). In his declaration, Reinkensmeyer notes only that the documents were "maintained primarily" at the Service's Grand Junction, Colorado office, and he apparently contacted other Service employees seeking additional records for the administrative record. *Id.* at ¶ 3. Reinkensmeyer does not identify who he contacted to obtain these documents, when he contacted them, or the results of these communications; and he does not indicate whether or not these standalone documents were available on an internal Service drive, who had access to this drive, who actually accessed and reviewed these documents, and whether access to the documents on the drive was password protected. *Id.* at ¶ 3.

Nor has the Service identified the recipients who had access to the 99 standalone documents. Thabault claims only that "[f]or the majority of these documents, the distribution of

these . . . documents is identified in the emails that transmitted them."  Second Thabault Decl., ¶ 8.  This explanation is particularly problematic for two reasons.  First, Thabault never explains which and how many of the 99 standalone documents were distributed more broadly than the associated emails identify, and Thabault never identifies to whom the documents were shared via email and whether these persons were agency employees, third-parties or otherwise.  *Id.*

Moreover, it appears that the Service is purposefully underrepresenting the number of individuals with access to these 99 standalone documents by implying that the standalone documents were only accessible via email distribution.  *Id.*  In his two declarations, Thabault makes no mention of a Service "drive" or electronic hard-drive used to store these standalone documents, and Reinkensmeyer similarly makes no note of reviewing, examining or searching any electronic storage device or "drive" in compiling the administrative record.  First Thabault Decl., ¶ 13; Second Thabault Decl., ¶ 8; Reinkensmeyer Decl. ¶ 3.

Yet, it appears that the Service used at least three separate networked hard-drives to store draft and final documents related to the Gunnison sage-grouse listing and critical habitat rules – including documents containing privileged attorney-client communications; and it also appears that some or all of these drives were readily accessible to Service employees without a password.

For example, on October 23, 2013, Charles Sharpe, a Service biologist, suggested another staffer check either the "N Drive" or the "Y Drive" for information related to the Gunnison sage-grouse listing rule.  AR 93617.  Nearly six months later, a separate Service biologist circulated an email noting that the final critical habitat rule was located on the "I drive," and provided a "link" to the document for review.  AR 131273. One month later, Sharpe told his superior that he placed draft confidential Gunnison sage-grouse documents on the "Y Drive in G[rand] J[unction]."  AR 142925.

Despite the fact that the Service used at least three networked hard-drives – including an "N Drive," "I Drive," and "Y Drive" – to store documents relating to the Gunnison sage-grouse listing and critical habitat rules, the Service has provided no information on these drives, including what documents went on these drives, whether the drives were password protected, who had the password, who had access to these drives, who actually accessed these drives, and other information on the existence and use of these networked electronic storage devices. First and Second Thabault Decl.; Reinkensmeyer Decl. Moreover, the record shows that the Service used these drives to store privileged communications, including documents the Service has withheld in this case. *Compare* AR 131273 (identifying linked document as "FINAL RULE CH GUSG 04_01_2014"), *with* Revised Privilege Log, Bates No. 137633-824 (withholding document entitled "FINAL RULE CH GUSG 04_01_2014"); *and id.* at Bates No. 144858-145049 (withholding document entitled "FINAL RULE CH GUSG 04_01_2014 (2)"); *and id.* at 150723-911 (withholding document entitled "FINAL RULE CH GUSG 04_01_2014gg_081914").

Since the Service used networked hard-drives to store privileged communications, and the Service has failed to provide any information on use and access of these networked drives, Thabault is wrong to imply that the distribution of the 99 standalone documents is limited to individuals listed on the emails that transmitted them. Second Thabault Decl., ¶ 8.

Like in *Judicial Watch*, and for the reasons already discussed in Guardian's earlier briefs, because the Service cannot identify the sources, authors and recipients of the 99 standalone documents, the Service may not invoke the attorney-client privilege to support its withholdings. *Judicial Watch*, 841 F.Supp. 2d at 155 (invoking attorney-client privilege without first disclosing authors and recipients is an "egregious example" of misuse of attorney-client privilege).

## II.     The Service's New Submissions Fail to Respond to this Court's Concerns.

This Court should reject the Service's latest effort to support its broad use of the attorney-client privilege because the Service failed to address the concerns and issues raised by this Court.

First, the Service failed to respond to the Court's request for information identifying when each individual with access to privileged information began and ended her respective participation on the Gunnison sage-grouse team.  More specifically, the Service previously justified the "unusual[ly]" large number of personnel (n=88) with access to privileged information by explaining that there "was significant turnover in the individuals serving on the different GUSG teams."  First Thabault Decl., ¶ 16.  During the hearing, this Court directed the Service to provide evidence supporting this assertion by including for each individual who received confidential information a timeframe identifying when that individual's service on the Gunnison sage-grouse team began and ended.  The new Privilege Log Names List does not include this information, and Second Declaration of Michael Thabault does not include this information either.  *See* Second Thabault Decl.; Privilege Log Names List.

For the reasons discussed in detail in Guardians opening and reply brief, the Service cannot meet its "heavy burden" of proving that it limited disclosures only to those who had a "need to know" of the privileged communications without the information.  *Silverstein v. Fed. Bureau of Prisons*, Case No. 07-cv-02471-PAB-KMT, 2009 WL 4949959 (D. Colo. Dec. 14. 2009) (the burden is on the government agency seeking invocation of the privilege).  *See also* Opening Br. at 6-11, Reply Br. at 2-6.

The Service also failed to provide any further information justifying its disclosure of confidential information to third-parties, especially Claire Santoro and Industrial Economics, Inc. As discussed in detail in Guardians' reply brief, disclosure of privileged information to

contractors and other third parties waives the attorney-client privilege unless the Service can establish that the recipients were the "functional equivalent" of a federal employee. *See* Reply Br. at 7-12. *See also Coorstek v. Reiber*, Case No. 08-cv-01133-KMT-CBS, 2010 WL 1332845, * 5 (D. Colo. April 5, 2010) (outlining "functional equivalent" test); *A.H. v. Evenflo Co., Inc.*, Case No 10-cv-02435-RBJ-KMT, 2012 WL 19567302 (D. Colo. May 31, 2012) (same).

The Administrative Record is devoid of any evidence establishing that Santoro was the functional equivalent to an employee, and there is no information in the record explaining whether Santoro had the primary responsibility for communicating with the Service; had a continuous and close working relationship with the Service; or possessed information otherwise lacking in Industrial Economics, Inc. *See* Reply Br. at 7-12. The Second Declaration of Michael Thabault offers no additional evidence supporting the Service's claim that Santoro and Industrial Economics were "functional equivalents" of a federal employee, even though counsel referenced a contract between the Service and Industrial Economics during the March 2016 hearing.

Absent competent evidence establishing this connection, the Court must reject the Service's use of the attorney-client privilege to shield these documents. *Evenflo Co.,* 2012 WL 19567302, *4 ("Before application of the attorney-client privilege will be extended to non-employees, however, the party asserting the privilege must make a detailed factual showing that the non-employee is the functional equivalent of an employee").

### III. The Service's New Submissions Fail to Provide Sufficient Evidence Establishing that the 88 Individuals with Access to Privileged Information had a "Need to Know."

The Service has failed to support its invocation of the attorney-client privilege to shield from disclosure documents shared with 88 agency personnel and third parties. As noted earlier, when a government agency invokes the attorney-client privilege, the confidentiality element will

be satisfied only if prior disclosures were made on a "need to know basis." *See* Opening Br. at 6-11; Reply Br. at 2-6. *See also FTC v. GlaxoSmithKline*, 294 F.3d 141, 147-48 (D.C. Cir. 2002) ("the applicable standard is . . . whether the documents were distributed on a need to know basis"); *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 863 (D.C. Cir. 1980) (the test for maintaining confidentiality is whether the documents "were circulated no further tha[n] among those members of the organization who are authorized to speak or act for the organization in relation to the subject matter of the communication"). When the entity invoking the attorney-client privilege has demonstrated heightened measures were in place to protect against unwarranted disclosure of confidential information, a court need not require the party to demonstrate each individual's "need to know." *GlaxoSmithKline*, 294 F.3d at 147. *See also Williams v. Spring/United Mgmt. Co.*, 238 F.R.D. 633, 642 (D. Kan. 2006) (similar test).

Here, the Service has made no effort to establish that the 88 persons with access to privileged information – up from 59 earlier in this litigation – had an individualized "need to know." Second Thabault Decl. Instead, the Service maintains that simply being a member of the Management Team (n=26), Listing Package Team (n=23), Support Team (n=17), or being an attorney (n=13) justifies sharing and receiving confidential information. *Id.* at ¶¶ 11-18. For the reasons previously discussed in detail, there exists no presumption that the Service limited circulation on a "need to know" basis, and courts require more than conclusory statements and *ipse dixit* to meet a party's evidentiary burden. *See* Reply Br. at 2-7 and cases cited.

The Service's refusal to make an individualized showing is particularly problemmatic here because the Service implemented none of the measures in place in *GlaxoSmithKline* and *Williams* designed to limit disclosure of privilege communications. *See* Opening Br. at 8-11; Reply Br. at 2-6. For example, unlike in *GlaxoSmithKline*, the Service did not limit circulation

to a few senior staffers, and instead circulated privileged information to 88 agency personnel and third parties. Moreover, unlike in *Williams*, the Service did not protect the confidential information behind a secure password, and the record **now** shows the Service placed its privileged information on at least three networked hard-drives, and there is no indication the Service put these documents behind a firewall or protected password. And, unlike both *GlaxoSmithKline* and *Williams*, there is no indication the Service notified any recipient of privileged information to closely guard access to the protected communications, or otherwise stamped any privileged communication as confidential. Opening Br. at 8-11; Reply Br. at 2-6.

Further compounding this problem for the Service is its admission that it cannot even identify the source, author or recipients of the 99 standalone documents. Where, as here, an agency has shown complete disregard in handling attorney-client communications and documents, this Court should "grant no greater protection to [the Service] than [its] own precautions warrant." *In re Sealed Case*, 877 F.2d 976, 980 (D.C. Cir. 1989) ("[I]f a client wishes to preserve the [attorney-client] privilege, it must treat the confidentiality of attorney-client communications like jewels – if not crown jewels.").

Accordingly, this Court should find the attorney-client privilege inapplicable here.

## **CONCLUSION**

For the foregoing reasons, this Court should hold the Service has failed to adequately support its invocation of the attorney-client privilege, grant Plaintiffs WildEarth Guardians' and Dr. Clait E. Braun's motion to complete the record, and order the Service to include all withheld and redacted documents in the Administrative Record.

Dated this 19th day of May, 2016         Respectfully submitted,

/s/ Todd C. Tucci
Todd C. Tucci (ISB #6526)
ADVOCATES FOR THE WEST
P.O. Box 1612
Boise, ID 83701
(208) 342-7024
(208) 342-8286 (fax)
ttucci@advocateswest.org

Attorney for Plaintiffs WildEarth Guardians and
Dr. Clait E. Braun

## CERTIFICATE OF SERVICE

     I hereby certify that today I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such to the attorneys of record.

/s/ Todd C. Tucci
Todd C. Tucci