**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

In re:  Gunnison Sage-Grouse
Endangered Species Act Litigation

Civil Action No. 1:15-cv-130-CMA-STV

This document relates to all the consolidated cases.

OPPOSED JOINT MOTION TO AMEND CASE MANAGEMENT PLAN IN
ACCORDANCE WITH FED. R. APP. P. 32(a)(7)

Pursuant to Fed. R. Civ. P. 7 and this Court's Civil Practice Standard 10.1(c)(3), Petitioners State of Colorado (Colorado), Center for Biological Diversity, Western Watersheds Project, WildEarth Guardians, and Clait Braun, along with Petitioner-Intervenors State of Utah, Gunnison County, Colorado, the Gunnison County Stockgrowers' Association, and San Juan County, Utah (collectively, Petitioners) file this Opposed Joint Motion to Amend the Case Management Plan governing these consolidated cases in accordance with FED. R. APP. P. 32(a)(7) in its entirety (allowing for either word count limits or page limits for briefs).  In compliance with D.C.COLO.L.CivR 7.1(a), Petitioners have conferred with the Federal Government, which has indicated that it opposes the motion. The Federal Government has included its position below in lieu of filing a separate response to this motion.

## INTRODUCTION

In the Proposed Joint Case Management Plan for the consolidated litigation filed by the parties on September 14, 2015, all of the Petitioners requested that no page limits be imposed on the merits briefs, contending that "the fact-intensive nature of the

issues," "the breadth of the facts and law undergirding the case, [and] the size of the administrative record" weighed against imposition of arbitrary page limits. ECF # 56 at 6-7. In the alternative, these parties requested a set of specific page limits. *Id.* at 7. The Court denied these requests. ECF # 63.

In contrast, Federal Defendants requested that the Court impose page limits in accordance with those "set out by the Tenth Circuit, FED. R. APP. P. Rule 32," specifically FED. R. APP. P. Rule 32(a)(7)(A). ECF # 56 at 8.

When this Court entered the Case Management Plan on October 8, 2015, it adopted the page limits in FED. R. APP. P. Rule 32, as requested by Federal Defendants. ECF # 63 at 6. Specifically, the Case Management Plan imposed the following limits:

1. 30 pages each for Petitioners' opening briefs;
2. 15 pages each for two Petitioner-Intervenors' opening briefs;
3. 120 pages for Federal Defendants' response brief;[1]
4. 15 pages each for Defendant-Intervenors' response briefs;
5. 30 pages for the Federal Defendants' reply brief;
6. 15 pages each for Petitioners' and Petitioner-Intervenors' reply briefs.

Petitioners respectfully request that the Court amend the Case Management Plan to permit the parties the option to comply with brief limits *either* under the current Case Management Plan page limits *or* in accordance with the word-count provided for in FED. R. APP. P. 32(a)(7)(B)(i) (which would allow for some additional length).

---

[1] With the expectation that Federal Defendants would file a single response brief to all three of the Petitioners' opening briefs and the Petitioner-Intervenors' two briefs.

For an administrative review case such as this where the facts and evidence are captured in a complex administrative record, Tenth Circuit case law requires this Court to refer to the Federal Rules of Appellate Procedure for guidance in managing these consolidated cases. *Olenhouse v. Commodity Credit Corp,* 42 F.3d 1560, 1580 (10th Cir. 1994). In addition, in accordance with this Court's Civil Practice Standard 10.1(c)(3), there is good cause for a different limit given the statutory structure governing the challenged administrative decision, the length of the challenged rule, the fact-intensive nature of the analysis, and the extensive administrative record.

**I.     It Is Appropriate To Adopt The Whole Of Fed. R. App. P. 32(a)(7)**

In most cases starting at the trial level in the District of Colorado, the regular local civil rules govern procedure. However, administrative review cases are governed by the local Administrative Practice Rules (AP Rules). *Compare* Local Rules, Section I Civil Rules, *with* Local Rules, Section III AP Rules. The AP Rules are more condensed and do not provide for the tools that are normally used in civil cases, like depositions or summary judgment.

This dissimilar treatment is appropriate given the structural differences between administrative appeals and most other civil trial cases. Extensive discovery and pretrial motions practice "at its core, is inconsistent with the standard for judicial review of agency action." *Olenhouse,* 42 F.3d at 1580. This is so because judicial review of administrative agency decisions in a federal district court, as in the instant case, is "processed as [an] appeal." *Id.*

Here, Petitioners are appealing a lengthy rule promulgated by the U.S. Fish & Wildlife Service (FWS) that designated the Gunnison sage-grouse as a threatened species under the Endangered Species Act. 79 Fed. Reg. 69192 (Nov. 20, 2014). During its rulemaking process, the FWS compiled an extensive administrative record containing the materials relied on by the agency during the rulemaking and meant to support the agency's decision. *See* ECF # 53-55. Thus, this case is not like other trial level cases where discovery is necessary to discover missing information or where facts are in dispute.

After the *Olenhouse* court recognized that in administrative cases the trial court must "act as an appellate court," it concluded that in such a situation "the district court should govern itself by referring to the Federal Rules of Appellate Procedure." *Id.* at 1580. Under FED. R. APP. P. 32(a)(7)(A), a principal brief may not exceed 30 pages. Rule 32 also provides, however, a type-volume limitation as an alternative to the page-based limitation. *Id.* at 32(a)(7)(B): "a principal brief is acceptable if it contains no more than 13,000 words." If a party elects to submit its brief under Rule 32(a)(7)(B), it must include a certificate confirming that the brief complies with the type-volume limitation. FED. R. APP. P. 32(a)(7)(C).

Therefore, in accordance with *Olenhouse* and FED. R. APP. P. 32(a)(7), Petitioners respectfully request that the Court permit the parties to file their briefs in compliance with either the page limits in Rule 32(a)(7)(A) or the word limit in Rule 32(a)(7)(B)(i) as follows:

   1. Petitioners' Opening Briefs:

     i.     Center, *et al.* – 30 pages or 13,000 words
     ii.    Guardians, *et al.* – 30 pages or 13,000 words
     iii.   State of Colorado – 30 pages or 13,000 words

2. Petitioner-Intervenors' Opening Briefs:

     i.     Gunnison Intervenors – 15 pages or 6500 words
     ii.    State of Utah/San Juan County Intervenors – 15 pages or 6500 words

3. Federal Defendants' Response Brief:

     i.     Federal Defendants – 120 pages or 52,000 words

4. Defendant-Intervenors' Response Briefs:

     i.     Gunnison Intervenors/State of Colorado – 15 pages or 6500 words
     ii.    Center, *et al.*/Guardians, *et al.* – 15 pages or 6500 words

5. Petitioners', Petitioner-Intervenors', and Federal Defendants' Reply Briefs:

     i.     Center, *et al.* – 15 pages or 6500 words
     ii.    Guardians, *et al.* – 15 pages or 6500 words
     iii.   State of Colorado – 15 pages or 6500 words
     iv.   Gunnison Intervenors – 15 pages or 6500 words
     v.    State of Utah Intervenors – 15 pages or 6500 words
     vi.   Federal Defendants – 30 pages or 13,000 words

## II. Good Cause Exists to Permit the Extended Limit

Moreover, good cause exists to allow the parties to choose between a page limit and word limit—the word limit provides some extra length—given the statutory structure under which the agency made its decision, the length of the challenged rule, the fact-intensive nature of the analysis, and the extensive administrative record.

First, under section 4 of the Endangered Species Act (ESA), 16 U.S.C. §1533(a), FWS may determine that a species is "threatened" on the basis of any one of five separate factors (or a combination thereof):

    a. the present or threatened destruction, modification, or curtailment of its habitat or range;

    b. overutilization for commercial, recreational, scientific, or educational purposes;

    c. disease or predation;

    d. the inadequacy of existing regulatory mechanisms; or

    e. other natural or manmade factors affecting its continued existence.

The U.S. Fish and Wildlife Service concluded that the Gunnison sage-grouse was threatened based on every factor but the second. 79 Fed. Reg. 69192 (Nov. 20, 2014). Briefing these factors requires a fact-intensive inquiry that thoroughly examines the record support for the Service's determination under one or more factors. Colorado, for example, must address four elements—each of which the Service discussed in a lengthy analysis—in order to demonstrate that the record does not support the agency's decision and instead indicates the species does not warrant ESA protection.

Environmental Petitioners' contention that the Service improperly failed to list the Gunnison sage-grouse as endangered requires dissecting the Service's findings on the first and fifth factors in detail, as well as demonstrating that the combination of threats facing the species imperils it to such an extent that it warrants the ESA's fullest protections. The burden facing all petitioners, of demonstrating the Service's finding was arbitrary and capricious, demands an intensive examination of the Record and warrants careful attention to each factor in briefing.

Second, the listing rule – the subject of this challenge – when published in double-spaced format (as opposed to the multi-column single-spaced printing in the Federal Register) is 520 pages long, with extensive discussion and background material. Admin. Record at 198646-199166. Rebutting the agency's conclusions from such a lengthy document is exceedingly difficult to accomplish effectively in a 30-page brief that must also encompass all the other components of a brief, such as the jurisdictional statement, standard of review, statement of facts, legal background, etc. By permitting all the briefs to be submitted in compliance with Rule 32's word limit, the Court will provide the space needed by Petitioners to present effective arguments while still preventing needless repetition or ineffective claims and avoiding unfairness to Federal Defendants.

Third, and also a reflection of the length of the agency's rule, the required analysis in this case, as in most listing decisions under the ESA, is highly fact-intensive. Petitioners' briefs must necessarily address the facts underlying the decision – for all four statutory factors – in order to demonstrate the agency acted unreasonably in its listing determination.

Fourth, the agency's administrative record is exceptionally long. It contains 241,600 pages within 12,375 documents.

In other words, Petitioners must demonstrate the agency's errors in a voluminous rule, using a multi-factor test, while synthesizing an extensive record under a standard of review that accords deference to the agency's decision in many circumstances. Therefore, in addition to the guidance in *Olenhouse*, there is good cause for permitting

the parties to adopt FED. R. APP. P. Rule 32's word-count limit, which will allow their briefs to exceed the current page-limit but remain with reasonable limits for what is effectively an appellate brief.

## THE FEDERAL GOVERNMENT'S POSITION

The Federal Government opposes the expansion of the page limits for several reasons. First, we have already been down this road before. The Petitioners and Petitioner-Intervenors raised these precise issues in their original request for additional, if not unlimited, pages in the proposed case management plan. ECF 56 at 6. The Court rejected those arguments for additional pages and agreed with the Federal Defendants' proposal that the briefs be limited to 30 pages for the Petitioners' Opening Briefs and 15 pages for all Intervenor and Reply briefs. ECF 63. Second, if the Petitioners and Petitioner-Intervenors disagreed with the Federal Government's proposal to have Fed. R. App. 32(a)(7)(a) apply alone, then it should have raised that issue at that time, not nearly two years later several days before their briefs are due.[2] Third, all of these parties are, in fact, already receiving additional pages because they have intervened in each other's cases. By doing so, they are entitled to file an extra response brief of 15 pages for each set of Defendant-Intervenors in addition to their opening and reply briefs. ECF 63 at 6. Fourth, as the Federal Government noted in the proposed case management plan, we are required to respond to all of these briefs at once. ECF 56 at

---

[2] Petitioners cite *Olenhouse* in which the Tenth Circuit was addressing the proper standard of review in APA cases and noting that the district court should not have permitted the filing of motions for summary judgment and the inclusion of evidence outside the administrative record. 42 F.3d at 1579-80. In that respect, the Tenth Circuit stated APA cases should be treated like appeals and not like typical civil cases.

7-8. We proposed a briefing schedule that we believe is appropriate for the page limits set by the Court. The expansion of page limits requested by the Petitioners and Petitioner-Intervenors collectively adds up to more than an additional brief the Federal Government must respond to. Finally, as the other parties conceded in their initial proposal for additional pages, there are no unique or unusual claims or defenses here. ECF 56 at 6.

Although we do not believe the other parties need additional pages to make their respective cases, in the spirit of compromise, the Federal Government offered the Petitioners an additional 5 pages each for their opening briefs, an offer they rejected. Should the Court be inclined to expand the page limits for opening briefs, we ask that the Court limit the expansion to 5 pages per Petitioner as we proposed to the other parties. Regardless of the size of any expansion of page limits, we respectfully request that the Court expand the Federal Government's page limits by the same number of pages or words that the Court grants the other parties. In other words, if the Petitioners are granted 13,000 words each and the Intervenors 6,500, then we ask that the Federal Government receive 52,000 words for its opening brief responding to the five total briefs that will be filed by the three sets of Petitioners and two sets of Petitioner-Intervenors.

Respectfully submitted on this 14th day of July, 2017,

        CYNTHIA H. COFFMAN
        Attorney General


        */s/ Lisa A. Reynolds*
        FREDERICK R. YARGER
        Solicitor General
        LISA A. REYNOLDS
        Assistant Attorney General
        Ralph L. Carr Colorado Judicial Center
        1300 Broadway, 7th Floor
        Denver, Colorado 80203
        Telephone: (720) 508-6252
        Fax: (720) 508-6039
        E-Mail: lisa.reynolds@state.co.us

        *Counsel for Petitioner State of Colorado*

CERTIFICATE OF SERVICE

I hereby certify that on July 14, 2017, I electronically filed the foregoing OPPOSED JOINT MOTION TO AMEND CASE MANAGEMENT PLAN IN ACCORDANCE WITH FED. R. APP. P. 32(a)(7) using the court's CM/ECF system, which will send notifications of such filing to all counsel of record.

DATED:  July 14, 2017                                  /s/ Lisa A. Reynolds
                                                       Lisa A. Reynolds